UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 5:25-cr-00084-GFVT-MAS-1 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | **&** |
| STEVEN TROY BUGG, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on Defendant Steven Troy Bugg's Motion for New Trial. [R. 62]. For the reasons that follow, the Court **DENIES** Bugg's motion.

**I**

On July 3, 2025, a grand jury indicted Steven Troy Bugg on three counts of knowingly and intentionally distributing 50 grams or more of methamphetamine in violation of 21 U.S.C. § 841(a)(1). [R. 1]. On August 7, 2025, a grand jury returned a superseding indictment, adding a fourth charge for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). [R. 7]. Before trial, Bugg moved to suppress evidence, [R. 20], which this court denied. [R. 30]. Bugg's trial began on January 6, 2026. [R. 39]. On January 8, 2026, the jury found Bugg guilty of all four counts listed in the superseding indictment. [R. 49].

The Court entered Bugg's sentencing order which scheduled Bugg's sentencing for May 7, 2026. [R. 55]. Bugg moved twice to extend the posttrial motions deadline, which ultimately gave Bugg up to and including February 23, 2026, to file any posttrial motions. [R. 58]. Bugg timely moved for a new trial on February 23, 2026, [R. 62], and the government responded in opposition on March 3, 2026. [R. 63]. The matter is fully briefed and ripe for adjudication in light of Bugg's approaching sentencing date.

Bugg proposes that he is entitled to a new trial under Fed. R. Crim. P. 33 or, alternatively, that he is entitled to an acquittal under Rule 29. [R. 62]. Bugg argues that a new trial is appropriate for two reasons. First, that the testimony of two law enforcement witnesses improperly exposed the jury to prejudicial character evidence. [R. 62 at 2–3]. Second, that the "admission of informant accusations" violated the Confrontation Clause of the Sixth Amendment and constituted incurable hearsay. [*Id.* at 3–4]. Bugg also suggests that he is entitled to an acquittal because the government failed to prove direct evidence of delivery and that the "mere presence at a crime is insufficient to support a conviction for drug conspiracy." [*Id.* at 5].

## II

The Court addresses Bugg's motion as follows. In Part A, the Court examines Bugg's renewed motion for acquittal under Rule 29. Part B considers Bugg's motion for a new trial under Rule 33.

## A

The Court first turns to Bugg's renewed motion for acquittal under Rule 29. Rule 29 requires this Court to enter a judgment of acquittal on "any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). The Court may not "independently weigh the evidence, nor judge the credibility of witnesses." *United States v. Paulus*, 894 F.3d 267, 275 (6th Cir. 2018). The Court views the evidence in the light most favorable to the prosecution and asks "whether . . . any reasonable trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Emmons*, 8 F.4th 454, 477–78 (6th Cir. 2021) (citation modified). "A defendant claiming insufficiency of the evidence bears a very heavy burden." *Id.* at 478 (citation modified). Further, the Court draws all reasonable

evidentiary inferences in favor of the government, even where the evidence is circumstantial. *United States v. Carter*, 355 F.3d 920, 925 (6th Cir. 2004).

Bugg first claims that "the Government's case on the distribution counts rests on a critical evidentiary void: no witness, video, or physical evidence established that Steven Bugg actually delivered or distributed narcotics to the confidential informant[.]" [R. 62 at 5]. The government disagrees. [R. 63 at 10–11]. In large part, Bugg's argument rests on the fact that the police officers never actually witnessed the controlled purchases themselves because, naturally, the purchases were made through a confidential informant. This informant did not testify at trial.

Drawing all reasonably inferences in the government's favor, there is sufficient evidence to sustain the conviction. Videos and photographs show Bugg holding and handling the narcotics. *See* [R. 60 at 28, 40, 43, 47]. Officers testified that they confronted him about the controlled purchases, which he did not deny. [*Id.* at 47]. Bugg consented to a search of his hotel room. [*Id.*] During this search, Bugg directed officers to an ounce of methamphetamine and a handgun. [*Id.* at 47, 49–50]. Trooper Tyler Morris testified that, based on his training and experience, the amount of methamphetamine and other drugs recovered in the hotel room alone suggested that Bugg was trafficking drugs, rather than just using them. [*Id.* at 50]. Through officer testimony, the government introduced the methamphetamine recovered through the two controlled purchases. [R. 61 at 12, 17].

The Court instructed the jury that they could "make reasonable inferences, unless otherwise instructed." [R. 42 at 5]. The jury could infer that Bugg intended to distribute narcotics "from the possession of a large quantity of drugs" and from the "defendant's words and actions." [*Id.* at 16]. A reasonable jury could conclude that there was sufficient evidence to convict Bugg of the crimes charged. Most obviously, Bugg consented to a search of his hotel room which

3

netted a substantial amount of methamphetamine and the handgun. [R. 60 at 47, 49; R. 59 at 33]. Sufficient testimony existed establishing how the confidential informant purchased large quantities of drugs from Bugg twice. [R. 61 at 8–13]. There was also testimony that Bugg later cooperated with authorities to identify other individuals who were trafficking large amounts of methamphetamine and fentanyl. [*Id.* at 19–20]. Taken together, there is sufficient evidence to support the conviction, particularly in light of the fact that there is a "strong presumption in favor of sustaining a jury conviction." *United States v. Peters*, 15 F.3d 540, 544 (6th Cir. 1994).

Any concern Bugg has regarding the officers' supposed lack of direct face-to-face with Bugg during the informant's purchases is easily dismissed by the fact that the Sixth Circuit sanctions the use of controlled purchases such as this. *See United States v. Knipp*, 138 F.4th 429, 436 (6th Cir. 2025). Prior to his controlled-buy meetings with officers, "the informant had no drugs on his person or in his vehicle, yet he came back with [] meth each time." *Id.* "The jury even saw video recordings [] of the drug transactions themselves[.]" *Id.* The Court thus **DENIES** Bugg's Rule 29 motion.

**B**

The Court next turns to Bugg's argument that he is entitled to a new trial under Federal Rule of Criminal Procedure 33. Rule 33 allows the Court to vacate a judgment entered against a defendant and grant a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). Rule 33 motions are ordinarily granted "only in the extraordinary circumstances where the evidence preponderates heavily against the verdict." *See United States v. Hughes*, 505 F.3d 578, 593 (6th Cir. 2007) (citation modified). Unlike in a Rule 29 motion, on review of a Rule 33 motion the Court may "act as a thirteenth juror, assessing the credibility of witnesses and the weight of the evidence." *Id.*; *United States v. Lutz*, 154 F.3d 581, 589 (6th Cir. 1998).

4

In support of his Rule 33 motion, Bugg asserts that the verdict goes against the weight of the evidence and that substantial legal errors occurred. On this latter point, the Sixth Circuit holds that "Rule 33's 'interest of justice standard' allows the grant of a new trial where substantial legal error has occurred." *United States v. Munoz*, 605 F.3d 359, 373 (6th Cir. 2010). Bugg argues that two legal errors occurred. First, that the jury heard improper prejudicial character evidence which should have been excluded under Federal Rule of Evidence 404. [R. 62 at 2–3]. Second, that the admission of informant accusations violated the Sixth Amendment's confrontation clause and constituted incurable hearsay. [*Id.* at 3–6]. The Court will address Bugg's character evidence claim in Subpart 1. The Court then analyzes his remaining claims in Subparts 2 and 3.

**1**

Bugg takes issue with introduced testimony that referenced his drug trafficking history. [R. 62 at 2–3]. Bugg points to two specific pieces of testimony. First, from the testimony of Officer Hunter Harrison:

> Prosecutor: So how did you become involved in the case regarding the defendant Steven Bugg?
>
> Harrison: In early 2022, actually previously other – I was still assigned at that time as a member of the Madison County Drug Task Force officer with the DESI – Kentucky State Police DESI East. *We had received complaints of Mr. Bugg trafficking large quantities of methamphetamine, heroin or fentanyl* in the surrounding areas. So then we had a confidential informant that was able to purchase narcotics from Mr. Bugg, and that's how it begun.

[R. 61 at 4–5] (emphasis added). Second, from the testimony of Agent Nathaniel Parke:

> Prosecutor: In the course of your duties and responsibilities, did you become aware of the defendant Steven Bugg?
>
> Parke: I did.

> Q: Can you tell us how that came about.
>
> A: Madison County HIDTA; it's a Drug Task Force located in Madison County, Richmond, Kentucky. One of the troopers that was assigned to that unit had contacted me that he had an informant that **could buy from Steve Bugg**, and asked if I was familiar with Mr. Bugg. I was familiar with him **through other Lexington officers saying they had known him**.

[R. 59 at 14] (emphasis added). Bugg argues that these comments constituted improper propensity evidence, suggesting to the jury that because he was "known" for such acts, he must be guilty here. [R. 62 at 2–3].

Defense counsel objected to both of these statements during trial. [R. 59 at 15; R. 61 at 5]. The Court overruled counsel's objection to Nathaniel Parke's statement, noting that it was not offered for the truth of any asserted matter, but rather to explain the background of how Parke became involved in this case. [R. 59 at 15]. The Court sustained the objection to Harrison's statement in part but held that Harrison could state that "we've known him to have been involved in drug trafficking without kind of characterizing it in a way [that] relates to the seriousness of it." [R. 61 at 6].

Federal Rule of Evidence 404(b) generally prohibits the introduction of evidence of a person's "other crime, wrong, or act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Crim. P. 404(b). But *res gestae* or background evidence "lies beyond the rule's purview." *United States v. Johnson*, 95 F.4th 404, 417 (6th Cir. 2024). "Permissible *res gestae* background evidence concerns acts that are inextricably intertwined with the charged offense and have a casual, temporal, or spatial connection with the charged offense." *Knipp*, 138 F.4th at 436 (citation modified). "Such evidence may include evidence that is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense,

6

forms an integral part of the witness's testimony, or completes the story of the charged offense."

*United States v. Churn*, 800 F.3d 768, 779 (6th Cir. 2015).

After reviewing the transcript testimony, the Court is convinced that both statements were admissible as proper background evidence outside of the scope of Rule 404. Both statements "form[ed] an integral part of the witness's testimony" because they explain how both Harrison and Parke became involved in the investigation of Bugg. The evidence of Bugg's activities certainly is a prelude for the charged offenses because law enforcement's knowledge of Bugg's dealings prompted the investigation that resulted in the controlled purchases on April 20, 2022, and April 28, 2022.

Further, the Court instructed the Jury to not consider Bugg's other acts outside of the indictment when contemplating his guilt.[1] [R. 31]. Any reference to prior bad acts, even if permissible as background evidence, may be cured by limiting instructions. *United States v. Smith*, 656 F. App'x 70, 73 (6th Cir. 2013). "Juries are presumed to follow instructions given them, and nothing here indicates the jury here did otherwise." *Hildebrandt v. Hyatt Corp.*, 154 F. App'x 484, 489 (6th Cir. 2005).

The Court is convinced that no legal error occurred by admitting the limited statements as proper background evidence. Because Bugg does not show that a significant legal error occurred, the Court denies Bugg's Rule 33 motion on the basis of the Parke and Harrison statements.

**2**

Much of Bugg's motion addresses his claim that the jury heard improper hearsay testimony and that the failure of the government to call the confidential informant to testify constituted a violation of the Sixth Amendment's confrontation clause. At trial, Bugg pursued a

---

[1] The Court's instruction is a direct copy of the Sixth Circuit's Pattern Instruction 7.13.

theory that the government could not prove that the drugs in question came from him. In other words, defense counsel claimed that it was possible that the confidential informant got the drugs from someone other than Bugg. *See* [R. 59 at 48–50]. On redirect, the government engaged in the following colloquy with Parke:

> Prosecutor: Mr. Parke, you were asked about whether it was possible someone else provided the drugs to the informant, correct?
>
> Parke: Correct, yes, sir.
>
> Q: And you said it was possible. Is that a great possibility or a smaller possibility, or a very little possibility?
>
> A: Very little.
>
> Q: And why do you say that it's very little?
>
> A: ***Due to the informant's statements*** and –"
>
> Defense Counsel: Objection, Your Honor."

[R. 59 at 50–51] (emphasis added). At the bench, defense counsel raised his objection that a confrontation clause problem existed where the testifying witness—Parke—based his conclusion that the likelihood that someone else provided the drugs to the informant was "very little," supported by the *informant's* statements to Parke. The Court framed the situation by asking, "The statement made by the defendant to the informant, [] and then the informant relayed that statement to the witness [] on the stand now?" [*Id.* at 51].

The prosecution then asked whether he could ask a different question. [*Id.*] The Court agreed that was appropriate, stating "I think you might be able to do that. It's a little bit of a linkage problem." [*Id.*] The Prosecutor then reengaged the witness:

> Prosecutor: Without referencing what someone else said, why is it a small possibility?
>
> Parke: With the audio and video?

8

Q: And even though we're not looking at the audio, we're not looking at the video, what is the purpose of all these searches?

A: To make sure in fact that the informant does not bring any contraband to the drug transaction.

Q: And was there anything – ok. So, you are now saying that it's a small possibility at best?

A: At best, yes.

Q: All right. So – and that would apply to both the April 20, and the April 28 controlled purchases; is that correct?

A: Yes sir.

Q: Now, when you went into the hotel room prior to going in there, what did Bugg tell officers?

A: That there was narcotics and a gun located in the hotel room.

Q: And what was found in the hotel room?

A: Narcotics and a gun.

Q: And did he have access to those items?

A: He did.

Q: And when you found those items, were they in the locations he directed you to?

A: That's correct.

[*Id.* at 52–53]. So, to summarize, Parke first testified that it was unlikely that someone other than Bugg gave the informant the drugs because the informant relayed an incriminating statement made by Bugg to Parke. But after the bench conference, Parke testified it would be unlikely that someone else other than Bugg gave the informant the drugs because of the procedures law enforcement uses when conducting controlled purchases. These include searching the informant

9

for contraband beforehand, to ensure that they aren't independently carrying drugs to "set up"

the target. Parke summarized this procedure during direct examination:

> Prosecutor: So let me just go back to this procedure, this methodology that was utilized about searching the informant and their vehicle. What is the purpose of that?
>
> Parke: To make sure that they don't bring any kind of contraband to the controlled purchase. The whole deal with the controlled purchase is for them, if they have money on them, if they bring any money, then that money is removed from them so that there could no deception of that they already had the narcotics, or that they really didn't go buy, and the money reason, to make sure that their money's not commingled with the money that's been photographed that's DEA or KSP buy money.
>
> Q: And what's the concern about them having other money to go to a controlled buy?
>
> A: 'Cause they could purchase narcotics for themselves instead of what is in question that we're actually having them purchase.
>
> Q: And so when they return and there's a search – well, before I ask you that, what are the instructions about their travel to and from the location of the meet?
>
> A: They are to go straight to the location and straight back, not make any stops and get coffee, cigarettes, gas, anything. They – the directions are, you go straight to the location and then straight back to the pre-determined location that law enforcement makes.
>
> Q: And is that what happened with the controlled purchase on April 20?
>
> A: That is, yes.

[*Id.* at 22–24].

Bugg argues that Parke's testimony "implied that the informant stated the drugs came

from Bugg" and that "the jury was invited to rely on an absent witness to bridge a critical gap in

the government's case, the source of the narcotics." [R. 62 at 3]. The government responds that

"Parke stated the audio and video recordings and the searches of the informant before and after

10

the drug transactions with Bugg explained there was little possibility that someone else provided the drugs to the informant." [R. 63 at 6–7] (citing [R. 59 at 50–53]). The government also points out that the statement—the informant's recounting of what Bugg said—was never actually said in the presence on the jury. [*Id.* at 7]. Alternatively, the government contends that the overwhelming nature of the evidence renders the statement harmless error at best. [*Id.*]

The Sixth Amendment's Confrontation Clause guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. "This right prohibits the introduction of testimonial hearsay against criminal defendants." *Reed v. May*, 134 F.4th 455, 460 (6th Cir. 2025) (citing *Crawford v. Washington*, 541 U.S. 36, 59 (2004)). A statement is testimonial if its primary purpose is "to establish or prove past events potentially relevant to later criminal prosecution." *Davis v. Washington*, 457 U.S. 813, 822 (2006). Put another way, "a statement made knowingly to the authorities that describes criminal activity is almost always testimonial." *United States v. Cromer*, 389 F.3d 662, 675 (6th Cir. 2004). The Federal Rules of Evidence define hearsay as an out-of-court statement offered "to prove the truth of the matter asserted." Fed. R. Evid. 801(c). The Confrontation Clause does not apply to "the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Reed*, 134 F.4th at 460 (quoting *Crawford*, 541 U.S. at 60, n.9). Because an out-of-court statement "is only hearsay if it's admitted for a hearsay purpose," a court "must identify the role that a given out-of-court statement . . . served at trial." *Id.* (citing *Smith v. Arizona*, 602 U.S. 779, 793 (2024)).

The government argues that testimony did not admit any impermissible statement at all. [R. 63 at 7]. This point is well-taken. The prosecutor, on redirect, asked Parke why it was unlikely that someone other than Bugg provided the informant the drugs. [R. 59 at 50–51]. Parke

began to state that he felt it was unlikely because of the informant's statement to him and was continuing on before the defense's objection. [*Id.*] The statement's role at trial thus served the purpose of supporting Parke's contention that it was unlikely that the informant received the drugs from someone other than Bugg.

It is not likely that this "statement," in context, had a sizeable or even measurable impact on the jury. Defense counsel quickly objected to the statement, forcing the government to reposition its questioning of Parke. Parke stated again that he did not believe the informant received the drugs from someone other than Bugg, citing to the audio and video recordings, the search procedures in place when police use informants, and Bugg's own statements in the hotel room directing police to the narcotics and firearm in the room. Bugg is not entitled to a new trial on the basis of this single statement unless "it is more probable than not that the error materially affected the verdict." *United States v. Mack*, 729 F.3d 594, 603 (6th Cir. 2013). The admission of this single statement constitutes harmless error if "the record evidence of guilt is overwhelming, eliminating any fair assurance that the conviction was substantially swayed by the error." *United States v. Hardy*, 643 F.3d 143, 153 (6th Cir. 2011).

Here, the government did not rest its case on the statements that the informant made to Parke. They did not need to because the evidence of guilt was overwhelming. When speaking with officers at the traffic stop, Bugg did not deny selling "large amount[s] of methamphetamine" and later volunteered that he possessed an ounce of methamphetamine at his hotel room in addition to a gun. [R. 60 at 47]. Bugg led police to his hotel room, cooperated with police, and pointed them to the narcotics and the gun. [*Id.* at 49]. Bugg admitted that he had a supplier "supplying [him] with pound quantities of methamphetamine." [*Id.* at 51–53]. The jury heard extensive testimony as to both of the controlled purchases, accompanied by video. [R. 59

12

at 17–25, 26–29]; [R. 60 at 34–38, 40–44]; [R. 61 at 7–18]. The weight of this evidence, taken together, "eliminat[es] any fair assurance that the conviction was substantially swayed by the error." *Hardy*, 643 F.3d at 153. Bugg is not entitled to a new trial on this basis.

**3**

Bugg lastly argues that "mere presence or association at a crime scene is insufficient to support a conviction for drug conspiracy." [R. 62 at 5]. Bugg was not convicted of a drug conspiracy; he was convicted of possession and distribution. "To convict a defendant of possession with the intent to distribute, the government must show (a) the defendant knowingly (b) possessed a controlled substance (c) with the intent to distribute." *United States v. Hall*, 20 F.4th 1085, 1106 (6th Cir. 2022) (citation modified). The Sixth Circuit in *Hall* summarized the amalgamated rule of convicting a defendant for possession:

> The defendant does not need to be in actual possession of the substances; "constructive" or "joint" possession suffices. *United States v. Paige*, 470 F.3d 603, 609 (6th Cir. 2006). The evidence demonstrates constructive possession when it shows "ownership, dominion, or control over the contraband itself or the premises or vehicle in which the contraband is concealed." *United States v. White*, 932 F.2d 588, 589 (6th Cir. 1991) (quoting *United States v. Gordon*, 700 F.2d 215, 217 (5th Cir. 1983)). Drug possession may be proven either by direct or circumstantial evidence, and such evidence need not "remove every reasonable hypothesis except that of guilt." *United States v. Morgan*, 469 F.2d 83, 83 (6th Cir. 1972) (quoting *United States v. Prieur*, 429 F.2d 1237, 1238 (6th Cir. 1970)). Intent to distribute may be inferred from a large quantity of drugs. *United States v. Phibbs*, 999 F.2d 1053, 1065–66 (6th Cir. 1993) (finding that the possession of one kilogram of cocaine was enough to support an inference of intent to distribute).

*Hall*, 20 F.4th at 1106–07.

Bugg's contention that he was "merely present" at a crime scene distorts the facts in this case. As the Court has already explained, substantial evidence exists tying Bugg to the drugs, including his own statements, video and audio recordings, and the testimony of multiple officers

involved in the controlled purchases, the traffic stop, and the search of his hotel. The video evidence, hotel search, and Bugg's own statements demonstrate his ownership, dominion, and control over the methamphetamine and the handgun. The verdict does not go against the weight of the evidence. The Court concludes that a reasonable jury could convict Bugg of the charged offenses based on the evidence presented at trial. As such, the Court denies Bugg's Rule 33 motion.

### III

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

1. Defendant Bugg's Motion for a New Trial **[R. 62]** is **DENIED**.

2. Sentencing in this matter remains scheduled for May 7, 2026, at the hour of 1:30 p.m., at Frankfort, Kentucky.

This 13th day of April, 2026.

Gregory F. Van Tatenhove
United States District Judge

14